UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
———————————————————————X
:
EMMANUEL COOPER, : **NOTICE OF MOTION**
: **TO UNSEAL**
Plaintiff, :
:
-against- : 21 CV 4171 (ENV)(SJB)
:
THE CITY OF NEW YORK, *et. al.* :
:
Defendants. :
:
———————————————————————X

PLEASE TAKE NOTICE that upon the Declaration of THOMAS HOFFMAN, ESQ., the exhibits attached thereto, the attached memorandum of law, and all prior proceedings had herein, Plaintiff Emmanuel Cooper will move this Court before the Honorable Sanket J. Bulsara, at the United States Courthouse for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201, on a date and time to be determined by this Court, for an order unsealing the records and prosecution files of the Kings County District Attorney, Wilmer Hale and The Innocent Project concerning 21 wrongful conviction cases cited by the District Attorney in its report, Kings County District Attorney's Office, 426 Years: An Examination of 25 Wrongful Convictions in Brooklyn, New York, July 9, 2020, and for such further relief as this Court deems proper.

DATED:   Yonkers, New York
           November 3, 2022

*Thomas Hoffman*
_____
THOMAS HOFFMAN, ESQ.
Law Offices of Thomas Hoffman, LLC
37 Elaine Terrace
Yonkers, New York 10701-5257
Office: (212) 581-1180
Cell: (917) 589-6156
Email: thoff93451@aol.com

*Attorney for Emmanuelle Cooper*

TO:

Clerk
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

John Carroll
Chief of Civil Litigation
Kings County District Attorney
350 Jay Street
Brooklyn, New York 11201
CARROLLJ@BrooklynDA.org,

Rachel A. Seligman
New York City Corporation Counsel
100 Church Street
New York, New York 10007

Wilmer Hale
Beth Bookwalter
beth.bookwalter@wilmerhale.com,

Innocence Project
Allison Epperson
aepperson@orrick.com,

David McGill
dmcgill@orrick.com,

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
────────────────────────────────X
                                :
EMMANUEL COOPER,                :
                                :
            Plaintiff,          :  **DECLARATION OF**
                                :  **THOMAS HOFFMAN, ESQ.**
                                :  **IN SUPPORT OF MOTION**
      -against-                 :  **TO UNSEAL**
                                :
                                :  21 CV 4171 (ENV) (SJB)
                                :
THE CITY OF NEW YORK, *et. al.* :
                                :
            Defendants.         :
                                :
────────────────────────────────X

THOMAS HOFFMAN, an attorney duly admitted to practice Law in the State of New York, hereby declares under the penalty of perjury that the following is true:

1. I represent Emmanuel Cooper ("Mr. Cooper"), the Plaintiff in this 42 U.S.C. § 1983 action seeking damages for Mr. Cooper's wrongful arrest, prosecution and conviction that resulted in his losing over two decades of his life in prison.

## SUMMARY OF MOTION

2. This Declaration is submitted in support of Mr. Cooper's motion to unseal the records and prosecution files of the Kings County District Attorney ("KCDA"), Wilmer Hale, and The Innocence Project in 21 wrongful conviction

1

cases examined in the KCDA's 2020 Report entitled, 426 YEARS: An Examination of 25 Wrongful Convictions in Brooklyn, New York. ("The Report"), attached as Exhibit A. [1]

3.      The name and photograph of each exoneree whose case is studied in the Report is publicly available on the KCDA's website, which also lists their length of incarceration and the date of exoneration:



---

[1] The report may also be found at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/http://www.brooklynda.org/wp-content/uploads/2020/07/KCDA_CRUReport_v4r3-FINAL.pdf (last visited Nov. 2, 2022).

2

(http://www.brooklynda.org/wp-content/uploads/2022/09/TIMELINE-Blue-9-28.png) (last visited Nov. 3, 2022).[2]

4. The records are extremely relevant to Mr. Cooper's *Monell* claim alleging his wrongful 1993 conviction and malicious prosecution resulted from the KCDA's affirmative or *de facto* office-wide unconstitutional or policies, customs, and practices evincing deliberate indifference, including the failure to supervise and discipline prosecutors for violating their *Brady* disclosure obligation, and the obligation not to use false, coerced, or manufactured evidence. Complaint, Fifth Cause of Action, ¶¶ 296, 302.

5. The records are also relevant to Mr. Cooper's *Monell* claim alleging his post-conviction incarceration, from November 1993 to January 2020, was also caused and unduly prolonged by the KCDA's post-conviction policy and custom to cover up the *Brady/Giglio* violations committed by trial prosecutors, thereby continuing defendants' malicious prosecution and depriving them of their constitutional right to post-conviction disclosure of the *Brady/Gigilo* material suppressed during their trials. *Id.* Sixth Cause of Action, ¶¶ 362, 396.

6. The study jointly conducted by KCDA, The Innocence Project ("IP") and Wilmer Hale ("WH") examined the causes of 25 wrongful convictions

---

[2] The names of the 25 defendants in those 21 cases, as well as the indictment numbers to each case, are attached as Exhibit B.

3

occurring in Kings County between 1963 to 2011. Most of these convictions occurred in the 1980s, 1990s, and 2000s, contemporaneous for *Monell* purposes with Mr. Cooper's 1993 conviction.

7. The study found that the leading cause or 85% of the wrongful convictions examined in the Report were caused by prosecutorial conduct. Exhibit A at p.10. Despite this troubling finding the Report is silent as to what measures, if any, were taken to address the concededly pervasive, intentional, prosecutorial misconduct identified in the Report, including for example, filing grievances with the appropriate disciplinary committees.

8. The records Mr. Cooper seeks regarding the Report will help him prove his *Monell* claims and establish:

    (a) The dates on which the KCDA was put on notice of the prosecutors' misconduct in the 21 underlying cases, whether by way of a complaint, motion, or appellate brief;

    (b) How and when, if at all, the KCDA responded to that misconduct;

    (c) Whether the office undertook any legitimate investigative or remedial action to address the misconduct;

    (d) Whether the KCDA's current administration's decision to exonerate the 25 defendants was based on the same misconduct that the exonerees had alleged for years, and which the former Charles J. Hynes administration ignored for years prior to their exonerations;

4

(e) The names of the prosecutors who handled the 21 cases, which will allow Mr. Cooper to prove they were never disciplined or suffered any adverse employment consequences for their misconduct;

(f) Whether the culpable prosecutors were praised, promoted or given pay raises following the KCDA being put on notice of their misconduct;

(g) Whether any of the culpable prosecutors were repeat offenders, and whether the KCDA knew this but still took no action in response to credible allegations or judicial findings concerning their misconduct;

(h) Whether any of the culpable prosecutors are currently employed by the KCDA notwithstanding the KCDA's conclusion that they committed serious misconduct;

(i) The occurrence of misconduct similar to that in Cooper's case, both before *and after* his conviction, thus establishing the existence of an unconstitutional municipal policy. *See e.g. Benitez v. Lopez*, 372 F.Supp.3d 84,89 (E.D.N.Y. 2017) (Bulsara, J.) ("Plaintiff is required to prove a pattern or practice, and therefore the dates of the incidents do not render the records less likely to lead to evidence admissible at trial") citing *Nunez v. City of New York*, 2013 WL 2149869, at *4 (S.D.N.Y. 17, 2013); City of New York, 923 F.Supp.2d 462, 477 (E.D.N.Y. 2013) (Block, J.) (post-incident conduct "might … reflect a tacit policy on Hynes's part to condone whatever his subordinates deemed necessary to secure a conviction[.]"); and

(j) The KDCA's rationale for omitting the names of the culpable prosecutors' from the Report, and not filing grievances against them with the appropriate disciplinary committees.

9. The KCDA has authorized us to advise Your Honor that "[t]he Kings County District Attorney's Office is not filing an opposition to plaintiff's motion to

5

unseal and takes no position on this matter." WH and IP have also advised us that they take no position on this motion.

10.     Accordingly, the records and files concerning the Report should be unsealed.

## THE RELEVANT FACTS

**A.     Mr. Cooper's Conviction & Exoneration**

11.     Mr. Cooper was convicted of the November 1992 murder of a NYC token booth clerk who was shot and killed during a botched robbery at the Euclid Avenue subway station in Brooklyn. Two robbers pushed their way into the token booth as a token booth clerk, Russell Bratton, entered the booth, supposedly to retrieve papers he left in the booth the night before. Complaint ¶¶ 32-43 (Dkt. 1).

12.     There was no physical evidence or incriminating statements connecting Cooper to the crime. Instead, the case against him was based on the flawed identifications by the two token clerks —Russell Bratton and Elaine Terry— and a parolee named Rico Sanchez. Both clerks had only fleeting glimpses of the shooter, failed to identify Mr. Cooper from a photo array conducted just days after the crime, and took nearly five minutes to point him out as resembling one of the perpetrators during a lineup held over a month after the crime. *Id.* ¶¶ 33-64,166-179.

13.     With no forensics tying Mr. Cooper to the crime, and equivocal eyewitness identifications, Rico Sanchez became a critical witness for the prosecution case.

14. Sanchez testified that on December 4, 1992, he voluntarily accompanied two police officers to the precinct to assist in the investigation of the token clerk's murder. Sanchez had purportedly freely told the detectives and then testified that on the evening of the robbery, while standing on the avenue outside the subway station, after he heard two shots, he saw Mr. Cooper running from the station into a waiting car carrying a gun. *Id.* ¶¶ 171-177.

15. Sanchez's testimony was facially credible because he knew Mr. Cooper from his neighborhood, and supposedly had no incentive to falsely implicate a person he knew. *Id.* ¶¶ 95,160,171-174.

16. The trial prosecutor affirmatively vouched for Sanchez first in a colloquy to the Judge, and later in summation to the jury, claiming Sanchez had not been under arrest when he identified Mr. Cooper as running from the scene. *Id.* ¶¶ 175-178.

17. In 2019, 26 years after Mr. Cooper's conviction, investigators for Mr. Cooper located Mr. Sanchez living in California. Sanchez told the investigator, in a recorded statement which was memorialized in an affidavit, that in fact he had not entered the precinct on his own but was under arrest on two counts of attempted murder. *Id.* ¶¶ 219-222.

18. In July 2019 Mr. Cooper filed a CPL § 440.10 motion seeking to have his conviction set aside based in part on Sanchez' affidavit.

19. In December 2019, five months later, the KCDA disclosed previously suppressed arrest records that confirmed that Sanchez had not entered the precinct voluntarily but in handcuffs arrested and charged with two counts of attempted murder. Exhibit C.

20. These arrest records also showed the shotgun Sanchez used in the shooting was recovered at the scene. Sanchez's two victims on the day following the shooting gave sworn audio statements to the KCDA identifying Sanchez as the shooter. Three days after Sanchez implicated Mr. Cooper Sanchez's $7,500 cash bail was revoked and he was released from Rikers Island where he being held. Five weeks later the attempted murder charges were dismissed and sealed never (it was hoped) to see the light of day. Exhibit C; Complaint, ¶¶ 68-80, 92-95.

21. Sanchez, who was on parole at the time of his arrest, was never charged for illegal possession of the shotgun nor was his parole violated. *Id.* ¶¶ 80, 100.

22. In light of these explosive disclosures, on January 8, 2020 the KCDA agreed to have Mr. Cooper's conviction vacated and to his immediate release pending the decision as to whether Mr. Cooper would be retried. *Id.* ¶ 231.[3]

---

[3] At the time of his exoneration, Mr. Cooper was in his 27th year of imprisonment serving a 25 year to life sentence. He had been denied parole twice when he refused to acknowledge culpability for the murder.

23. Incredibly, as the KCDA prepared for retrial they disclosed two additional items of *Brady* material which had been suppressed for 27 years and throughout Mr. Cooper's appeals and FOIL requests. The new *Brady* material consisted of the police reports and audio statements by two witnesses, David Lucas and Thomas Volino, given the day after the murder, in which both witnesses identified someone other than Mr. Cooper as the perpetrator. One of the witnesses, David Lucas, actually identified a man named "Chris" as the perpetrator he saw fleeing from the booth carrying a gun. *Id.* ¶¶ 213 (a), (b).

24. On November 9, 2020, Acting Supreme Court Judge Ruth Shillingford granted the KCDA's motion to dismiss Mr. Cooper's indictment. *Id.* 243-244.

B. **Mr. Cooper's Subpoena For Records Concerning The Report**

25. On August 1, 2022, Mr. Cooper served the KCDA with a subpoena *duces tecum* demanding, as relevant here, that the KCDA produce,

   (a) All documents, reports, findings, conclusions made by the KCDA or the Innocence Project or other entity that was the basis for the wrongful conviction for each of the 25 reviewed cases in The Report,[4]

   (b) All records of the KCDA, concerning the investigation, discipline, or decision not to investigate or discipline, prosecutors who have been the subject of each of the 25 cases analyzed in The Report,

---

[4] Although the subpoena asks for records concerning all 25 convictions, we have agreed to only seek the records of the 21 convictions where prosecutorial conduct was implicated.

9

    (c)    The complete personnel files, including job performance evaluations, pay raises and salary cards of the prosecutors who handled the 25 wrongful convictions analyzed in the Report, and

    (d)    All memos, emails with the Innocence Project and/or Gibson Dunn (*sic*) or their employees, and other documents concerning the decision to exclude and/or omit the names of prosecutors involved in the 25 cases named in the report.

*See* Exhibit D at ¶ 59.[5]

26. In a meet and confer the KCDA advised that because the convictions discussed in the Report had been dismissed, all of the records pertaining to them had been sealed pursuant to CPL § 160.50. While plaintiff does not agree with KCDA's position, for expediency, the IP and WH who are not within the scope of the sealing statute were subpoenaed requesting the records they received from KCDA and used in the preparation of the Report.

27. In two meet and conferrals the IP and WH advised that as an exercise of caution, the records would not be disclosed without an unsealing order. If unsealed IP and WH agreed to enter into further negotiations for production. While we disagree with this position, because neither WH or IP are law enforcement agencies within the CPL § 160.50 proscription, to facilitate the resolution of this issue we have proceeded to file this instant motion.

---

[5] Mr. Cooper served identical subpoenas upon the IP and WH who assisted in the preparation of the Report.

10

### UNSEALING DOES NOT IMPLICATE THE PURPOSES OF CPL § 160. 50 AND IS NOT PREJUDICIAL TO ANY OF THE 25 EXONEREES

28. The purpose of the automatic sealing statute, CPL § 160.50 is to insure that "one who is charged but not convicted of an offense suffers no stigma as a result of his having once been the object of an unsustained accusation." *Johnson v. Riverhead Cent. School Dist.*, 2015 WL 6438788, at *4 (E.D.N.Y. 2015) (Hurley, J.)

29. The unsealing here would not implicate a criminal background check as the arrest and conviction would continue not to appear on any publicly available criminal history.

30. Nor is privacy an issue as each of the cases resulting in exonerations after decades of wrongful imprisonment are cases of notoriety that have received considerable media attention. As previously stated, the names and photos of the exonerees in those 25 cases are published on the KCDA website, and the facts of their cases are detailed on the publicly available National Registry of Exonerations.[6]

---

[6] See https://www.google.com/search?q=national+registry+of+exonerations&oq=national+&aqs=chrome.0.69i59j46i131i199i433i465i512j69i57j0i131i433i457i512j69i65j69i61l3.1557j0j9&sourceid=chrome&ie=UTF-8 (last visited Nov. 3, 2022).

11

31. Moreover, as discussed above, the records and files are relevant to Mr. Cooper's *Monell* claims. Mr. Cooper was wrongfully convicted because the egregious conduct of the trial prosecutor empowered by a municipal policy and practice that allowed trial prosecutors to commit misconduct with impunity. While Mr. Cooper and many other innocent lives were being destroyed, prosecutors operated under the Vince Lombardi football mentality that "winning is everything."[7]

32. This unconstitutional climate to protect prosecutors from disciplinary consequences is perpetuated with the Report's silence as to the prosecutors who committed the misconduct detailed in the Report -- causing the loss of 362 years of loss of liberty (85% of 426 )-- and the disciplinary measures, if any, that were taken to deter others from engaging in similar conduct.

33. The KCDA's failure to address the malefactors in the Report sends a strong message to other miscreants intent on winning at any cost: "Do not worry,

---

[7] During a relatively short two decades there were approximately 35 judicial and non-judicial exonerations. This is an astounding "error" rate which clearly has systemic origins that Mr. Cooper's *Monell* claim seeks to redress. The trial prosecutor was Mark Hale who in 2016 became head of the KCDA's Conviction Integrity Unit. Mr. Hale conducted over 100 trials in the two decades of the 1990s and 2000s. Preliminary discovery to date has disclosed at least three substantiated cases or findings of Mr. Hale's trial misconduct. At least a dozen cases involving Mr. Hale's trials are under investigation by the very CIU that he headed. Mr. Hale retired in July 2021. His personnel file produced in discovery does not contain a single reference to the multiple substantiated cases of misconduct, much less any evidence of disciplinary or remedial action taken in response to it.

even if there is an investigation, study, report, or findings of misconduct, you will not be named nor held accountable."

34. This unconstitutional policy and practice of turning a blind eye to prosecutorial misconduct allows the scourge of wrongful convictions to continue to wreak destruction on countless lives, and is a blot on our criminal justice system.[8]

35. The unsealed records will reinforce Mr. Cooper's complaint which cites to 27 appellate court decisions which during the five year period prior to Mr. Cooper's conviction, were reversed, remanded or noted *Brady* violations. An additional 64 appellate findings are listed (27 before Mr. Cooper's conviction) noting KCDA prosecutors' use of false evidence and/or making over-the-top summation arguments. Exhs. C and D attached to Complaint.

36. From discovery produced to date not a single one of the prosecutors responsible the misconduct were disciplined. In fact, several were promoted, and/or received salary increases and bonuses shortly after the appellate findings. Complaint ¶¶ 10, 321, 341.

37. Separately submitted is a memorandum of Law in support of this motion.

---

[8]Although Judge Shillingford when dismissing Mr. Cooper's indictment opinioned that an independent panel be appointed to study the circumstances of Mr. Cooper's conviction, one has not been appointed. As far as we know, an independent investigation by the KCDA was never undertaken.

13

38.   No previous application for similar relief has been made.

WHEREFORE, Mr. Cooper respectfully requests that the Court unseal the records and prosecution files in possession of the KCDA, Wilmer Hale, the Innocence Project relating to 21 cases cited in the Report that involved prosecutorial conduct, and grant such further relief as this Court deems proper.

DATED:   Yonkers, New York
         November 3, 2022

*Thomas Hoffman*
_____
THOMAS HOFFMAN, ESQ.
Law Offices of Thomas Hoffman, LLC
37 Elaine Terrace
Yonkers, New York 10701-5257
Office: (212) 581-1180
Cell: (917) 589-6156
Email: thoff93451@aol.com

*Attorney for Emmanuel Cooper*