

**Eric Gonzalez**
District Attorney

**DISTRICT ATTORNEY**
**KINGS COUNTY**
350 JAY STREET
BROOKLYN, NY 11201-2908
(718) 250-2000
WWW.BROOKLYNDA.ORG

A.D.A. John C. Carroll
CarrollJ@brooklynda.org
(718) 250-5243

**VIA ECF**                                                                                          Feb. 27, 2023

Hon. Ramon E. Reyes, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

                Re:     Emmanuel Cooper v. The City of New York, et al.
                       21-CV-4171 (ENV)(RER)
                       <u>**MOTION TO QUASH OR MODIFY SUBPOENA**</u>

Dear Judge Reyes:

        I represent the Kings County District Attorney's Office ("KCDA"), which has been served with the attached subpoena from plaintiff ("Pl.") in this matter (<u>see</u> Exhibit ["Ex."] A).[1] Pl.'s subpoena seeks: 50 specific Continuing Legal Education Classes ("CLEs") from KCDA's current CLE library (<u>see</u> Pl.'s Req. A); all of the other CLEs in KCDA's CLE library on numerous other topics (<u>see</u> Pl.'s Req. B); all of KCDA's correspondence with the New York Prosecutor's Training Institute ("NYPTI") concerning CLE's and training materials, including all of the CLE's and training materials provided to KCDA by NYPTI and to NYPTI by KCDA (hereinafter referred to as the "NYPTI correspondence and training materials") (<u>see</u> Pl.'s Req. C); and KCDA's Accredited Provider Year End Reports for the years 1990 through 1998 (<u>see</u> Pl.'s Req. D).[2] Pl.'s subpoena is overbroad, vague and ambiguous, unduly burdensome on its face, Pl.'s requests are not proportional to the needs of the case, and Pl.'s subpoena seeks materials wholly irrelevant to Pl.'s claims. The materials sought by Pl. are also shielded from disclosure by numerous privileges, including the attorney work-product privilege. Thus, for the reasons set forth below, and for the reasons in KCDA's Rule 45 Objections (<u>see</u> Ex. B), this Court should quash the subpoena.

        The Federal Rules of Civil Procedure ("FRCP") require a court to quash or modify a subpoena that subjects the recipient to an "undue burden." FRCP 45(d)(3)(A)(iv). "Whether a subpoena imposes an 'undue burden' depends on factors including relevance, the need of the party for the documents, the breadth of the documents request, the time period covered by it, the particularity with which the documents are described, and the burden imposed." <u>In re Biovail Corp., Securities Lit.</u>, 247 F.R.D. 72, 74 (S.D.N.Y. 2007)( holding that the Court must weigh the probative value of the information against the burden of production on non-parties); <u>see</u> <u>Cohen v. City of New York</u>, 2010 U.S. Dist. LEXIS 44762, 2010 WL 1837782 at *3 (SDNY May 6, 2010);

---

[1] I hereby certify that, pursuant to FRCP 37(a)(1), on Feb. 9, 21, & 27, 2023, KCDA had "meet and confers" with Pl.'s counsel in a good faith effort to resolve our dispute regarding the subpoena.

[2] In response to Pl.'s Req. D, as of this writing, KCDA has only been able to locate an Accredited Provider Year End Report for the Years 1997-98 and is willing to provide a redacted copy of that report to Pl. Further, without in any way waiving the numerous objections KCDA has to Pl.'s Reqs. B & C, KCDA has located and is willing to provide to Pl. redacted copies of digital projector slides and handout materials related to two CLEs on the subject of the Freedom of Information Law ("FOIL"). Neither of these CLEs are part of KCDA's current CLE library. As such, KCDA has not located videos of the actual CLE classes for either of these CLEs. Since these materials were recently discovered, KCDA asks the Court to give it 10 business days to provide them to Pl. KCDA intends to furnish Pl., at the time of the production, with a privilege log explaining any redactions to the documents (<u>see</u> Ex. C for more details).

<u>Certain Underwriters at Lloyd's v. National Railroad Passenger Corp</u>., 318 F.R.D. 9, 14 (EDNY 2016) (holding that the purpose of FRCP 26(b)(1) is "to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information.").

Here, Pl.'s requests for large portions of KCDA's current CLE library (<u>see</u> Pl.'s Req. A & B), as well as the NYPTI correspondence and training materials (<u>see</u> Pl.'s Req. C), are vague, ambiguous, not proportional to the needs of the case, and seek materials wholly irrelevant to Pl.'s claims. None of these materials have any relevance to Pl.'s conviction in 1993. Indeed, NYPTI did not even exist when Pl. was convicted. Pl. claims that he is entitled to these materials because of what he refers to as a continuing <u>Brady</u> violation resulting from: 1) KCDA failing to disclose <u>Brady</u> materials to Pl. during Pl.'s direct appeal in the 1990's and his 1997 habeas corpus motion; and 2) KCDA's FOIL Unit's failure to disclose <u>Brady</u> materials to Pl. during his numerous FOIL requests between 1994 and 2017. Contrary to Pl.'s claims, however, the contents of KCDA's current CLE Library, which contains no entrees from the 1990's, has no relevance to an alleged <u>Brady</u> violation that occurred during Pl.'s trial in 1993 or to an alleged continuing <u>Brady</u> violation which occurred during post-conviction litigation in the 1990's. Moreover, NYPTI only became a CLE provider in 1998 when CLE's became mandatory in New York. Thus, nothing in the NYPTI correspondence and training materials could have any relevance to the post-conviction <u>Brady</u> claims alleged by Pl.

There is also no connection between Pl.'s Reqs. A, B, or C and Pl.'s claim that the KCDA's FOIL Unit failed to disclose <u>Brady</u> materials to him. The KCDA's current CLE Library contains no CLE's that are specifically focused on FOIL, which is unsurprising given that the FOIL Unit is predominantly staffed by paralegals. Thus, the contents of KCDA's current CLE library would not be relevant to Pl.'s Brady claims against the KCDA's FOIL Unit. Furthermore, Pl.'s blanket request for all NYPTI correspondence and training materials is manifestly overbroad on its face. Such a request by a civil litigant for an unlimited review of the files of a non-party, on demand, and without any effort to narrow the request to training materials and correspondence related to FOIL amounts to an unreasonable and oppressive intrusion against public policy. It should also be noted that, the KCDA has already produced binders of training materials for FOIL staff as part of the more than 10,000 pages of documents that have already been disclosed to Pl. by KCDA.

Even if these materials were relevant to Pl.'s claims, KCDA's CLE's and training materials are core work-product shielded from disclosure by the common law attorney work-product privilege. Not only do these materials contain the mental impressions, conclusions, opinions, theories, strategy and legal analysis of the KCDA prosecutors who spent thousands of hours creating them, these materials were created for the express purpose of directing KCDA attorneys on how to prosecute their cases. See <u>Nat'l Ass'n of Crim. Def. Laws. v. United States DOJ</u>, 844 F.3d 246, 250 (D.C. Cir. 2016) (holding that a discovery manual constituted attorney work-product because the internal manual "addresse[d] how attorneys on one side of an adversarial dispute -- federal prosecutors -- should conduct litigation"); <u>see</u> also <u>United States v. Adlman</u>, 134 F.3d 1194, 1195 (2d Cir. 1998) (holding that a document is core work-product when it tends to reveal the mental impressions, conclusions, opinions or theories of an attorney). In <u>Nat'l Ass'n of Crim. Def. Laws.</u>, the D.C. Circuit held that a "Blue Book" created by the U.S. Attorney's Office – which "was designed to provide advice regarding the law … and to serve as a litigation manual" for DOJ attorneys when prosecuting their cases – was shielded from disclosure as attorney work-product. Like the DOJ Blue Book, KCDA's CLEs and training materials were created to provide legal advice to KCDA prosecutors and to provide those prosecutors with a step-by-step guide on how they should conduct litigation. Accordingly, Pl.'s subpoena seeking these materials should be

quashed. See ACLU v. United States DOJ, 210 F. Supp. 3d 467, 483 (SDNY 2016) (documents reflecting the polices, practices, and procedures of the DOJ was attorney work product); Tankleff v. Cnty. of Suffolk, 2011 WL 5884218, at *2 (EDNY Nov. 22, 2011) (common law work product has been applied to shield documents from disclosure where "[r]equiring disclosure could have a chilling effect on when and how [ ] attorneys commit their thoughts to paper").

Furthermore, since KCDA's CLEs and training materials contain question and answer sessions between CLE instructors and the KCDA attorneys attending the CLEs, these materials are also shielded from disclosure pursuant to the intra agency and deliberative process privileges. See Ingles v. City of NY, 2004 U.S. Dist. LEXIS 21783 at *1 (SDNY Oct. 7, 2004). The materials also contain law enforcement and investigative techniques that are shielded from disclosure by the law enforcement and public interest privileges. See In re The City of New York, 607 F.3d 923 (2d Cir. 2010). They may also contain private information about law enforcement personnel that is shielded from disclosure by the official information privilege. See Collens v. City of NY, 222 F.R.D. 249, 253 (SDNY 2004). Finally, they may also contain samples from closed criminal cases that contain private information about witnesses and law enforcement personnel that should be withheld on privacy grounds. See United States v. Amodea, 71 F.3d 1044, 1050-51 (2d Cir. 1995).

Any factual materials contained in the KCDA's CLE and training materials are inextricably intertwined with the privileged materials rendering those materials also exempt from disclosure. See Am. C.L. Union v. U.S. DOJ, 252 F. Supp. 3d 217, 227 (SDNY 2017) (holding non–exempt information is not reasonably segregable when it is "inextricably intertwined" with the exempt information in a document "such that disclosure would compromise the confidentiality of [exempt] information that is entitled to protection). Indeed, it would be virtually impossible for the KCDA's small Civil Litigation Unit ("Civil Unit") to review hundreds of hours of CLE video footage – in which senior KCDA prosecutors provide legal analysis and instructions on various litigation topics and answer questions posed to them from their audience – and try to separate and redact the privileged materials from these videos. Similar issues would arise from trying to comb through and redact the privileged information from the thousands, if not tens of thousands, of pages of documents that accompany the CLEs and training materials.

Requiring KCDA to try to separate the factual materials contained in the CLE s and training materials from the privileged materials would also be unduly burdensome. The enormous task of combing through and redacting the privileged information from thousands of pages of documents as well as parsing through hundreds of hours of CLE videos – which would entail painstakingly documenting, down to the second, every part of the videos that must be redacted by KCDA's multimedia unit – would take the small Civil Unit months, if not years, to comply with. See Keebler v. Rath, 405 F. Appx. 517, 520 (2d Cir. 2010) (finding that a subpoena requiring the Sullivan County DA's Office to review over 83,000 computer files, at a cost of over $80,000 in salary and benefits clearly constituted an "undue burden"); In re Terrorist Attacks on Sept. 11, 2001, 523 F. Supp. 3d 478, 494 (SDNY 2021) ("Whether compliance with a requested search would be unduly burdensome depends on the volume of material requested, the ease of searching for the requested documents . . . and whether compliance threatens the normal operations of the responding agencies"); Corbett v. eHome Credit Corp., 2010 WL 3023870 at *3 (EDNY 2010) (even if "the burden of compliance is not onerous" a subpoena seeking materials of little relevance is "likely to be quashed as unreasonable," particularly where the demand is made to a non-party).

For the reasons set forth above, this court should quash or modify Pl.'s subpoena. Moreover, given the scope and complexity of the issues raised by Pl.'s subpoena, KCDA requests permission from this Court to file a reply to Pl.'s response to this motion to quash.

Respectfully submitted,
ADA John C. Carroll (JC7511)

**c.c.**: All Parties via ECF