# LAW OFFICES OF THOMAS HOFFMAN, LLC
37 Elaine Terrace, Yonkers, New York 10701-5257 • Tel. (212) 581-1180

Mobile: 917-589-6156
Email: thoff93452@ao1.com

March 2, 2023

**By ECF**
Honorable Ramon E. Reyes
US Magistrate Judge
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  <u>Cooper v. City of New York,</u> 21 CV 4171 (ENV)(RER)

Dear Judge Reyes:

    I represent Plaintiff Emmanuel Cooper, a man who was wrongfully convicted and spent nearly 28 years of his life in prison for a crime he did not commit.[1] We submit this letter in response to (1) the Kings County District Attorney's ("KCDA") pre-motion letter regarding its proposed motion to quash our January 23, 2023, subpoena *duces tecum*, Exhibit ("Ex.") A, and (2) the KCDA's request for permission to invoke the attorney work product and other privileges without providing the privilege log necessary for the court to evaluate the applicability of those privileges in the first place.

    Our subpoena seeks targeted Continuing Legal Education ("CLE") courses from the KCDA's DVD/Video Self-Study program and other CLEs relevant to our *Monell* claims based on the policies and practices of the KCDA. Our complaint alleges Cooper's 1993 conviction resulted from the KCDA's deliberate indifference to prosecutorial misconduct, demonstrated by, among other things, the KCDA's maintenance of several facially unconstitutional policies, customs, and practices concerning criminal defendants' constitutional fair trial rights. Complaint ("Compl.") ¶¶ 296-300. Our complaint also alleges these policies "created an anything goes atmosphere" that led to the cover-up of Cooper's wrongful conviction and the continuation of his malicious prosecution for 27 years (1994-2020) after his trial. *Id.* at ¶ 302, ¶¶ 362-406.

    **The KCDA's Proposed Motion To Quash Is Meritless.** In 2013 when the late Kenneth P. Thompson was elected as District Attorney for Kings County he publicly stated that he had "inherited a legacy of disgrace [from former DA Charles J. Hynes] with respect to wrongful convictions[.]" Colin Moynihan, *Two Brooklyn Murder Convictions From 86' Are Vacated*, New York Times, Oct. 15, 2014. Under the Hynes administration (1990-2013) at least 25 mostly poor and minority men were falsely convicted and collectively lost over 426 years of their lives in prisons for crimes they did not commit. The "scandal" prompted a rare editorial from a sitting federal judge calling for an end to prosecutorial immunity. Honorable Frederic Block, Senior District Judge, Let's Put An End To Prosecutorial Immunity, The Marshall Project, March 13, 2018. As Judge Block explained, "[t]he phony cases have run the gamut from prosecutors not turning over exculpatory evidence … to using false testimony from the same supposed eye-witness in at least

---

[1] The Kings County District Attorney's Office ("KCDA") consented to vacatur of Cooper's conviction in

1

three unrelated cases." *Id.* In 2020 the KCDA itself finally acknowledged in a formal report that the wrongful convictions were attributable to "*the failures of the prosecution as an institution*" and the "*failure to train or guide prosecutors adequately.*" Kings County District Attorney's Office, 426 Years: An Examination of 25 Wrongful Convictions in Brooklyn, New York, July 9, 2020, p. 14 (emphasis added). The KCDA's training that led to these and the other catastrophic injustices detailed in our Complaint, ¶ 299(a), are at the heart of our *Monell* claims.

*The Relevance Of The CLE Records To Cooper's Monell Claims.* Cooper's *Monell* claims involve institutionally endorsed misconduct in six areas: pre-indictment witness interrogations, grand jury proceedings, abuse of process, pretrial witness prep, trial and summation misconduct, and the post-conviction continuing obligation to disclose *Brady* material suppressed during trial. Compl. ¶¶ 124-132, 292-406. The CLEs are relevant as they (1) provide objective evidence of the KCDA's training in these areas during the relevant time period (1992 to 2020), (2) establish the KCDA's routine practices and thus evidence of institutional habit and routine practice under Fed.R.Evid. 406, (3) establish the KCDA's regularly conducted activities under Fed.R.Evid. 803(6), (4) likely contain key admissions, attributable to the City under Fed.R.Evid. 801(d)(2)(A)-(E), regarding the existence of various practices in the relevant areas, (5) provide indispensible circumstantial evidence concerning matters and practices taking place over a 28-year-period, (6) provide significant material to use during depositions of adverse KDCA employees, and (7) reflect the KCDA's unguarded attitude in the relevant areas, evidence crucial for purposes of deliberate indifference under *Monell*.

One CLE we recently obtained foreshadows the value of the CLEs to Cooper's *Monell* claims, and provides remarkable evidence of the KCDA's office-wide malicious abuse of criminal process through the use of illegal office subpoenas. Compl. ¶ 296 (e), 102-213, 141-155, *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (recognizing § 1983 action for malicious abuse of criminal process). The illegal office subpoenas, colloquially referred to as "Come See Letters,"[2] consist of a a grand jury subpoena and letter to the witness requesting his appearance at the KCDA. Ex. C ("Come See Me Letter" in *People v. Neptune*, 161 Misc. 2d 781 (Sup. Ct. Kings Co. 1994) (Gerges, J.). They are designed to "coerce" the witness into meeting with the prosecutor and have long ago been declared illegal. *Id.* at 782-783; *Rodrigues v. City of New York*, 193 A.D.2d 79, 86 (1st Dep't 1993) (prosecutor may not use a subpoena to force witness to appear at his office); *Matter of Rain*, 162 A.D.3d 1458, 1459 (3d Dep't 2018) (prosecutor's use of office subpoenas constituted fraudulent conduct and, along with other misconduct, warranted two year suspension).

Despite the illegality of these office subpoenas, in a 2014 CLE *the KCDA's Director of Legal Training* provided a "Checklist" instructing prosecutors that before announcing ready for trial, they should be prepared to discuss with their supervisors whether they issued office subpoenas for their witnesses. *See* Catherine Dagonese, *Case, Witness & Trial Preparation Tips for New Prosecutors*, p. 3 (Ex. D at p. 4) ("Have you sent 'Come See Me Letters?'"). The CLE thus provides evidence that the use of these "fraudulent" office subpoenas was ratified at the highest levels of the KCDA. The obvious non-disclosure of the use of the office subpoenas constitutes a *Brady* violation in each of the cases they were employed in as the use of such illegal subpoenas provided the defendant with grounds to suppress "any information" obtained from the victimized

---

[2]Ex. B, Deposition of KCDA Detective-Investigator Brian Maher in *Collins v. City of New York*, 11 CV 766 (FB)(RML), pp. 35-36 (defining a Come See Letter).

2

witness, *People v. Arocho*, 85 Misc.2d 116 (Sup. Ct. New York Co. 1976), and grounds to impeach the prosecution's case, *Kyles v. Whitley*, 514 U.S. 419 (1995).  This unlawful practice was in effect at the same time the KCDA was continuing Cooper's malicious prosecution by concealing the *Brady* material suppressed during his trial (Ex. E), and the fact that the KCDA's *Director of Legal Training* openly endorsed such a practice bolsters Cooper's theory regarding "anything goes" atmosphere that allowed his conviction and continued prosecution to take place.
It also provides evidence that this was the *prior* policy as well.  *See Bordanaro v. McLeod,* 871 F.2d 1151, 1167 (1st Cir. 1989) ("Post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right."); *Collins v. City of New York*, 923 F. Supp.2d 462, 477 (E.D.N.Y. 2013) (Block, J.) (same).

Finally, the CLEs are relevant because they constitute official written policy in the relevant areas for *Monell* purposes.  In *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), the Supreme Court held a municipality may be held liable under § 1983 for causing, through a final policymaker's exercise of authority, an individual to suffer a violation of his constitutional rights and for any resulting harm.  Following *Monell*, the Second Circuit held New York City District Attorneys are final city policymakers with respect to training, supervising, and disciplining their staff concerning their constitutional obligations.  *See Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992).  Thus, once the DA by his own actions or those of his designee promulgated internal office-wide CLE training for his staff to follow, the CLEs became municipal policy for *Monell* purposes.  *Monell* at 690 (*Monell* policy includes actions that "execute[] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by" a final policymaker); *Montero v. City of Yonkers, New York*, 890 F.3d 386, 403 (2d Cir. 2018) (official policy includes "formal rules or customs that intentionally establish fixed plans of action over a period of time") (quotes omitted).  Unlike other *Monell* theories requiring extensive factual development of prior instances of misconduct, the official policy theory provides a simple, straightforward method of establishing the City's liability.  *Monell*, 436 U.S. at 713 ("clear case" exists for municipal liability when it is based on "formal, written policies of a municipal department[.]")  Even if the CLEs do not constitute written policy, they document the course of action the DA instructed prosecutors to follow and are thus a critical memorialization of the KCDA's customs and practices over the relevant 28-year period.

**The KCDA's Conclusory Assertions Of Privilege Are Meritless.**  "Once there is a showing of relevance, then the party withholding discovery on the grounds of burden, expense, privilege, or work product bears the burden of proving the discovery is in fact privileged or work product, unduly burdensome and/or expensive." *Fulton v. City of New York*, 2023 WL 130826, at *2 (E.D.N.Y. 2023) (Henry, M.J.).  The KCDA failed to meet this burden as it did not provide a privilege log or the evidentiary support necessary to invoke the relevant privileges.  *Gov't Emps. Ins. Co. v. Zaitsev*, 2022 WL 420490, at *1 (E.D.N.Y. 2022) (Bulsara, M.J.) (non-party's failure to provide privilege log made "it impossible for … the Court to evaluate the privilege in the first instance.")  Indeed, the KCDA's circular claim that every question and answer between CLE participants and instructors constitute attorney work product erroneously presupposes, without a scintilla of proof, that those CLEs, questions, and answers qualify as attorney work product in the first place.  Similarly, the inapplicable attorney work product cases the KCDA cites in its letter, pp. 2-3, concerns work product *in the FOIA context* where, unlike the civil context, it is an absolute bar to disclosure. (Ex. G) (Cooper emails to KCDA distinguishing cases). The CLEs are simply not privileged as (1) they do not qualify as work product under the three-prong test in *Hickman v.*

3

*Taylor,* 329 U.S. 495 (1947), *see Abdell v. City of New York*, 2006 WL 2664313, at *4 (S.D.N.Y. Sept. 14, 2006) (Francis, M.J.), (Ex. F: Sample KCDA CLE Course Summaries);[3] (2) the CLEs were "prepared in the ordinary course of business or … would have been created in essentially similar form irrespective of litigation," *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015); (3) any purported privilege was waived when the KCDA provided its CLEs to the NYS Continuing Legal Education Board, which in turn disclosed some of them to the public under the NY Freedom of Information law, (4) to extent that the CLEs facilitate intentional torts (like abuse of process), they are accessible under the crime/fraud exception to the work product privilege, *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 452–53 (S.D.N.Y. 2011) ("[A] large body of case law recognizes the crime/fraud exception applies "to non-fraud intentional torts[]"), (Ex. H: CLE Certification on Basic Subpoena Practice); (5) the KCDA failed to provide a privilege log; and (6) any qualified work product or other privilege is overcome by Cooper's substantial and compelling need for the CLEs.

Finally, the KCDA complaining about the purported "undue burden" of complying with Cooper's subpoena is akin to a man who killed his parents complaining he should receive mercy because he is an orphan. It was the KCDA that "created this situation ... [and] it [is] reasonable that [it] should bear the burden of any inconvenience resulting from the situation it has created." *Calabrian Co. v. Bangkok Bank, Ltd.,* 55 F.R.D. 82, 87 (S.D.N.Y.1972). The Self-study DVD/Video CLEs are easily accessible, numerically arranged, centrally located with the KCDA's CLE Coordinator, KCDA's Continuing Legal Education 2021 Year End Report at. P. 44 (Ex. I), and **each DVD/Video ranges from about an hour to two hours at most.** *Id.* at pp. 1-42 (KCDA CLE Activity Table, listing length of each CLE). The KCDA has over 506 legal staff and it can surely manage its vast resources in order to comply with the minimal work required by Cooper's subpoena. This is the least it can do considering the "undue burden" it forced Cooper to endure.

**The KCDA's Request To Forgo Providing A Privilege Log Should Be Denied.** The KCDA objects to our subpoena based on attorney work product and other privileges, but asks the Court to allow it to forgo providing a privilege log establishing those privileges apply in the first place. The KCDA points out that Fed. R. Civ. 26 does not apply to non-parties. While that may be true, the applicable rule here is Rule 45, which requires non-parties claiming a privilege to prepare a privilege log. *See In re Application For Subpoena To Kroll*, 224 F.R.D. 326, 328 (E.D.N.Y. 2004) (Spatt, J.); *Gov't Emps. Ins. Co. v. Zaitsev*, 2022 WL 420490, at *1 (E.D.N.Y. 2022) (Bulsara, M.J.) (same). Without a privilege log, it is simply "impossible for … the Court to evaluate the privilege in the first instance[.]" *Id.* at *1. Obviously, the KCDA is not entitled to withhold the CLEs without making the evidentiary showing required to invoke a privilege.

Respectfully submitted,
*Thomas Hoffman*
Thomas Hoffman

cc: NYC Corp. Counsel and KCDA Counsel by ECF

---

[3] *Accord Lawrence v. Suffolk Cnty.*, 2022 WL 855380, at *4 (E.D.N.Y. 2022) (Bulsara, J.) (holding it "borders on the frivolous" to argue the DA is entitled to work product simply because its "[d]eliberations and decisions relating to how the office will supervise the implementation of its duty to prosecute are always made with the prospect of the litigation of those cases in mind[.]")